IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAUREN GREENE**<br>**345 Sumter Street**<br>**Apartment B**<br>**Charleston, SC 29403**<br>                          Plaintiff<br>          v.<br><br>**THE OFFICE OF REPRESENTATIVE**<br>**BLAKE FARENTHOLD, Member, U.S.**<br>**House of Representatives**<br>**c/o Office of House Employment Counsel**<br>**1036 Longworth House Office Building**<br>**Washington, D.C. 20515**<br>                          Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S ORIGINAL COMPLAINT

For her Complaint against The Office of Congressman Farenthold, Plaintiff Lauren Greene, by and through her undersigned attorneys, avers the following, together or in the alternative, based on information and belief and/or the Plaintiff's personal knowledge.

### JURISDICTION

1. Plaintiff invokes the jurisdiction of this Court pursuant to The Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2. This is an action authorized and instituted pursuant to The Congressional Accountability Act, (2 U.S.C. 1301 *et seq*.).

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. The Plaintiff was the Communications Director for Defendant up until the time of her termination, in July 2014.

5. The Defendant, Representative Blake Farenthold, the Plaintiff's former employer, is

the Representative of the 27th Texas Congressional District, in the United States Congress, located in the District of Columbia.

6. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely Request for Counseling before the Office of Compliance raising the violations of the Congressional Accountability Act complained of here. The Plaintiff participated in the Office of Compliance Counseling and Mediation sessions; and the Plaintiff files this Complaint after the expiration of 30 days, and before the expiration of 90-days, following the receipt of the notices of the termination of mediation.

## BACKGROUND FACTS

7. Ms. Greene began working as the New Media Director for Defendant in February 2013.

8. Ms. Greene was an experienced staffer in the House of Representatives, who had worked for another Representative for over three years prior to her employment with Defendant Farenthold.

9. On or about February 11, 2014, Farenthold told Plaintiff that he was estranged from his wife and that he had not had sex with her in years.

10. Farenthold regularly drank to excess, and because of his tendency to flirt, the staffers who accompanied him to Capitol Hill functions would joke that they had to be on "red head patrol" to keep him out of trouble.

11. On one occasion, prior to February 2014, during a staff meeting at which Plaintiff was in attendance, Farenthold disclosed that a female lobbyist had propositioned him for a "threesome."

12. Plaintiff was concerned because, despite her outreach efforts prior to that time, Farenthold was awkward toward her at work and regularly seemed to try to avoid interacting with her, which made her work as the New Media Director, difficult.

13. On the night of January 7, 2014, because she was concerned about her ability to perform her job, Plaintiff confided in Emily Wilkes (who was Congressman Farenthold's Executive Assistant), that Farenthold was awkward toward Plaintiff and ignored her.

14. In response, Wilkes informed Plaintiff that Farenthold had admitted to being attracted to Plaintiff and to having "sexual fantasies" and "wet dreams" about Plaintiff.

15. Farenthold knew that Wilkes and Plaintiff were friends and confidantes and that Wilkes would likely convey his comments to Plaintiff, which is exactly what happened on this and other occasions.

16. The disclosure about Farenthold's sexual fantasies made Plaintiff even more uncomfortable in the workplace; and approximately the same week, Plaintiff asked Wilkes if anyone else in the office knew about Farenthold's infatuation with her. Wilkes told Plaintiff that the District Director, Bob Haueter (who was soon promoted to Chief of Staff), was the only other person who knew about the Congressman's attraction to, and fantasies about, Plaintiff.

17. On or about January 22, 2014, the Communications Director announced that she was resigning from her position.

18. Farenthold offered Plaintiff the Communications Director position on or about January 24, 2014, and Plaintiff was instructed to switch the title on her email signature from New Media Director to Communications Director as of February 3,

2014.

19. On February 3, 2014 Haueter, who by then had been made Acting Chief of Staff, informed Plaintiff that her promotion was only on a "trial" basis and that he was interviewing other candidates. Haueter told Plaintiff that she would have to interview for the position. During this conversation Haueter advised Plaintiff that she was fortunate that there were not many Communications Directors looking for jobs at that specific time, which comment demeaned and embarrassed Plaintiff.

20. The same day, February 3, 2014, Plaintiff asked Wilkes if she had already been promoted (as she believed, based on *inter alia* Farenthold's communications) or if she was merely one of several candidates being considered for the position, as Haueter indicated.

21. Haueter met with Plaintiff on February 4, 2014, in what Plaintiff believed was to be the interview. The meeting consisted primarily of Haueter berating Plaintiff for having asked Wilkes about whether or not she had already been promoted. At the conclusion of the February 4, 2014 meeting, Haueter begrudgingly informed Plaintiff that she had been selected for the position.

22. Haueter's retaliatory conduct was intended to, and did, belittle and humiliate Plaintiff.

23. Plaintiff was required to maintain her New Media Director responsibilities as well as her Communications Director duties, because her former position was never back-filled.

24. After she became Communications Director, Farenthold continued to act awkwardly toward Plaintiff, such that he rarely met with her in private, one-on-one settings. This was a stark contrast to his behavior with the former communications director, with

whom he had one-on-one meeting on nearly a daily basis.

25. Plaintiff was also uncomfortable around Farenthold, and she was particularly anxious to avoid private meetings, because she knew about his fantasies about her.

26. Farenthold regularly made comments designed to gauge whether Plaintiff was interested in a sexual relationship. For example, in addition to the comments specifically mentioned, above, Farenthold would compliment Plaintiff's appearance, or comment on her wardrobe, and then joke that he hoped his compliments did not constitute sexual harassment. On one specific occasion, Farenthold told Greene that she had something on her skirt and that he hoped his comment wouldn't be taken for sexual harassment. A reasonable person would infer that Farenthold was joking that she had semen on her skirt. On another occasion, Farenthold told Plaintiff that her skirt was partially unzipped at the top. Plaintiff went to the bathroom to zip her skirt, and she realized that the opening was so small that Farenthold would have had to be staring at her closely to notice.

27. On June 10, 2014, in response to Haueter's complaint about Plaintiff's shirt (discussed further below), which Haueter claimed was transparent and showed Plaintiff's nipples, Farenthold told Wilkes that Plaintiff could show her nipples whenever she wanted to. Wilkes informed Plaintiff of the comment.

28. Plaintiff complained about the hostile conduct that she encountered to Ms. Wilkes, in the hopes that Ms. Wilkes – who had close professional relationship with Farenthold and who, as a result, had significant authority among the staff – could put an end to the hostile conduct.

29. Despite Plaintiff's complaints, the discriminatory conduct toward her continued.

30. In addition to Haueter's conduct relating to Plaintiff's promotion, Haueter made Plaintiff's professional life unbearable. Among other things:

   a. Haueter excluded Plaintiff from the regular Senior Staff meetings that were held each week that Farenthold was in Washington, D.C. The previous Communications Director was invited to all of these meetings.

   b. In March 2014, Haueter required Greene to conduct back-to-back 10-minute drop in meetings with each of the approximately 75-100 media outlets in Farenthold's large Congressional District. The timing of these visits, spread over only two and a half days, left no room for error, such that Plaintiff could not afford to get lost. Consequently, Ms. Wilke's and the District Staff arranged for a District Representative to meet Plaintiff in each region in the Congressional District to take her from meeting to meeting. When he learned about the arrangements that had been made, Haueter angrily confronted Greene and claimed that she was requiring the other staff members to "baby" her.

   c. Haueter then bullied Plaintiff into committing to renting a car and finding her own way to each of the tightly scheduled meetings. Ultimately Plaintiff had to go around Haueter to arrange to have employees of the District Offices guide her to the meetings to ensure that she would manage to stick to the compressed schedule.

   d. Haueter regularly publicly humiliated Plaintiff in staff meetings, blaming her for errors and failings committed by others.

   e. In a June 10, 2014 meeting with Farenthold and Wilkes, Haueter proclaimed that he was going to send Plaintiff home to change clothes because Haueter claimed

6

       he could see Plaintiff's nipples through her shirt.  Wilkes then had to insist that she would convey Haueter's concerns to Plaintiff.  Neither Wilkes nor Farenthold considered Plaintiff's shirt to be inappropriate or revealing.

31. On June 12, 2014, Plaintiff had a breakfast meeting with Farenthold to discuss Haueter's hostile treatment of her.  During that meeting, Plaintiff complained to Farenthold that Haueter was bullying her and treating her in a very hostile fashion.  Farenthold replied that Haueter was known to be condescending toward women on the staff, and then paid empty, lip service encouragement for Plaintiff to stand up for herself.

32. Farenthold failed to take any action regarding Haueter's conduct toward Plaintiff.

33. Following her meeting with Farenthold on June 12, 2014 both Farenthold and Haueter marginalized and undermined Plaintiff by, among other things: curtailing their interactions with her, having Haueter usurp her Communications Director duties, and ignoring communications from Plaintiff.

34. Plaintiff was fired less than one month after she complained about the hostile work environment to Congressman Farenthold.

35. At no time prior to her termination did anyone, including Farenthold or Haueter, inform Plaintiff that her job was in jeopardy.

## COUNT I: HOSTILE WORK ENVIRONMENT

36. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

37. Defendant violated the anti-discrimination provisions of the Congressional Accountability Act, by creating a hostile working environment against Plaintiff, based

on her gender.

38. As a result of the Defendant's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost pay (resulting from her ultimate termination) and emotional damages due to the hostile treatment which caused her embarrassment, humiliation, loss of enjoyment of life, sleeplessness and feelings of depression and anxiety.

## COUNT II: GENDER DISCRIMINATION

39. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

40. Defendant violated the anti-discrimination provisions of the Congressional Accountability Act, by discriminating against Plaintiff because of her gender, including terminating her from her position in July 2014.

41. As a result of the Defendant's unlawful conduct, Plaintiff has suffered substantial economic damages, in the form of lost pay and emotional damages due to the hostile treatment which caused her embarrassment, humiliation, loss of enjoyment of life, sleeplessness and feelings of depression and anxiety.

## COUNT III: RETALIATION FOR ENGAGING PROTECTED ACTIVITY

42. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

43. The Defendant violated the anti-retaliation provision of the Congressional Accountability Act by terminating her shortly after she complained to Defendant about the discrimination and hostile work environment that she was experiencing.

44. As a result of the Defendant's unlawful conduct, Plaintiff has suffered substantial

economic damages, in the form of lost pay and emotional damages due to the hostile treatment which caused her embarrassment, humiliation, loss of enjoyment of life, sleeplessness and feelings of depression and anxiety.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act and the Civil Rights statutes made applicable to the Defendant therein; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by paying Plaintiff back pay, front pay and any other monetary damages proved at trial, in addition to compensatory damages in an amount to be determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC

Leslie D. Alderman III (D.C. # 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for the Plaintiff